Good morning. May it please the Court. My name is Stephen Preziosi. I represent the appellant, Mr. Alharbi. Your Honor, point one of my brief argues that the evidence below was insufficient in that the government did not prove sufficiently that Mr. Alharbi had made false statements in his naturalization application and in his passport application. Your Honor, the case seems to center on the fact that he used the name Nasser Durham Murshed and that he claimed that his uncle was his legal parent. His uncle was Durham Ahmed Murshed. The government's case seems to center around the argument that he was not the biological issue of Murshed, his uncle, or that this was not within the boundaries of matrimony. And I think the definition of parent is much broader. It's much broader in the statute. The definition, the statute we're talking about, is Title VIII, United States Code 1101, and in the case law, the case law of this Court, and in the common law as well. So the statute, I think we're talking about Title VIII, United States Code 1101. And 1101b2, kind of in a very roundabout way, defines the term parent. And what it does is it defines it by defining the relationship between the person who was allegedly the parent and the child. And if you look at 1101b1, it says the term child means an unmarried person under 21 who is a child, and there's three different categories, a child born in wedlock, a stepchild, whether or not they are born in wedlock, and b1c, which is relevant here, is a child legitimated under the law of the child's residence or under the law of the father's residence. And that was what was claimed at trial here. We have two documents coming from Yemeni courts, one in 1982, when Mr. Harby was 11 years old, and one from 1992 when he was 21 years old, demonstrating that his uncle, and I think you're familiar with the facts, his father abandoned him when he was two years old. He went to live with his uncle when he was two, and his uncle legally declared him his son in 1982, and it began- Can I stop you there on the legally? Did you, was there, there was an assertion that adoption was not Mr. Harby testified to the fact that in Yemen, they didn't have adoption, but he could, his uncle could give him his name, bring him into his house, and certainly he raised him as his child. Was there any testimony about the scope of what that employed? Did the uncle, did the uncle take on a responsibility under Yemeni law to provide for his care and support? Was there testimony of that? I mean, I understand that the defendant made the representation that you can't adopt in Yemen, but you just used the word legitimate or legal, legally asserted the name of his, or acquired the name of his uncle. Correct. And my question to you was, was there, when that assertion was made, was what that meant fleshed out in any way for the court or for the jury? Both of the documents are in evidence, Judge. They're at A255 and A257, and they're both court documents, declaring that Mr. Murshid, he's using the name Nasser Durham Murshid, my client, Mr. Al Harby, is the son of Durham Ahmed Murshid. So they're both court documents declaring that he recognizes him as his son. And again, one is in 1982 at A255 of the record. One is in 1992 at A257 of the record. What was the definition of parent that you wanted the court to give? We wanted it to go beyond that of biological, you know, biological father and son. And beyond that of the boundaries of matrimony. Yeah, that's what I'm asking. How would you define the boundaries of what a parent includes? Excellent question, Your Honor. It's pretty broad. You know, we have, and I referenced in my brief, the case, the case law of this court's case law, Jane versus Sessions, the Ninth Circuit, the scale versus an INS, and of course the New York Court of Appeals case in the matter of Brooke. So it doesn't, under all three of those cases, they don't have to be biological father and son. It does not have to be within the boundaries of matrimony. But there does have to be, I think, where the facts of this case go, is that Mr. Murshed, Ahmed Murshed, his uncle, brought him into his home when he was two years old, gave him his name, provided for him, sent him to school.  Just to follow up on Judge Perks' question, the specific instruction you requested, I think, tell me if I'm wrong, was that you wanted the court to say a biological connection was not required. Correct. Were you seeking any further definition of what legitimated means? Either, neither biological nor within the boundaries of matrimony. Because I think one of the controversies- So again, you were seeking clarification as to what was not required. You weren't pressing any particular, you weren't asking for a charge as to what it means, aside from what's not required, is that right? Yeah, the trial attorney definitely said, was asserted at trial, and I think the crux of the cross-examination of Mr. Earl Harvey was, you're not the biological son of Ahmed Murshed. And certainly we concede that, he is not the biological son. One of the government's arguments below that he was cross-examined, that Mr. Earl Harvey was cross-examined on and is argued here, by the government here, is that there's one line in the documents that claims that his aunt is his biological mother. Which Mr. Earl Harvey readily conceded that that wasn't true. His aunt is not his biological mother. He did not prepare the documents. He said, listen, I didn't prepare these documents. My aunt, Zana, is obviously not my biological mother. But I don't think that, in and of itself, and I think the government's claim is, it seems to claim that, that in and of itself, negates the legitimacy of these documents. That his uncle held him out as his son, as early as when he was 11 years old. And I think the evidence, the testimony of Mr. Earl Harvey, the two court documents, certainly show that he was his legitimate son. And he used that name. He used the name Merced. It was the only name he knew. And that was the name he put on those applications. There's a BIA decision that concludes, interpreting this provision, that a biological connection is required. What's your view as to what we're to do with that? Your Honor, I know Your Honor is aware, and I'm certainly keeping a close eye on this, on the Chevron Doctrine, as to whether or not we're going to be following the BIAs. I don't know that the Chevron Doctrine, or that we have to follow that. That certainly remains to be seen within the next 60 days or so. But I think it would be very limiting for us to say that a parent, the definition of a parent must be biological between parent and child. I think that is certainly a very, very narrow view, especially here in 2024. I don't think any court, and Your Honor will see my reference to the New York Court of Appeals case, in the matter of Brooke, where they decided, we are deciding this now, that there is not a biological requirement. We join the majority of other states throughout the United States, that that is not a requirement. I see that my time is up. I want to reserve some time for Republicans. Thank you. Thank you, counsel. We'll hear from the government. Good morning, and may it please the Court. John Alex Romano on behalf of the United States. Mr. L. Harvey has not identified any reversible error below, and we ask that the Court affirm his convictions, beginning with the sufficiency of the evidence. The evidence at trial amply demonstrated and proved that Mr. L. Harvey lied, both on his naturalization application and on his 2010 passport application. First, in two interviews on July 5th, 2017, with immigration officers and a Department of State agent, Mr. L. Harvey admitted that he made false statements on these two documents. In his first interview, he admitted, for example, that his name was always Father Mohamed Al-Harvey, and that his name was never Nasser Duraim Murshid, Murshid being the name of his uncle. He admitted that he used his uncle's name to immigrate to the United States. He admitted that the name of his father was Mohamed Saif Al-Harvey, and he admitted that he lied on his original visa application and on his naturalization application. And then in the second interview, with another immigration officer with a Department of State agent, he admitted, for example, that the father that he named on his 2010 passport, Murshid, was not his correct father. He admitted that he obtained a false identity document in Yemen before he obtained his visa, that false identity document being in the name of Murshid. And all of these admissions were corroborated by other evidence. Take, for example, his 2015 passport application, where he lists his birth parents on that 2015 passport application, not Murshid or Zayna Murshid, his aunt, but he lists his birth parents. Take, for example, his 2019 letter to a congressman where he's asking for assistance in the delay of his passport reissuance. In that letter, he says that he originally came to the United States under his uncle's name, then he changed it back to his original name. So he's admitted that he had another name other than Murshid, and the court looks at his naturalization application, when he's asked if he ever used another name other than Murshid, he says none. And then, of course, he made a false explanation for why he wanted to change his name to Al-Harbi when he naturalized. He said Al-Harbi was his wife's family name, and that he simply liked the names Bavo and Mohammed. And we know that's not true. Even at trial, he testified that he wanted to change his name to Al-Harbi as sort of a nod to his heritage. So all of that evidence corroborated his admissions. And the jury was not required to credit those two documents that my friend on the other side has referenced, and that was sort of the subject of some evidence below. These are the purported Yemeni court records at pages 255 and 257 of the appendix. Mr. Al-Harbi himself disavowed those documents when he testified, because they indicate that his aunt was his birth mother, and that's flatly incorrect. There would be no reason to put that in those documents. And at trial, he said any document listing his aunt as his birth mother is false. So for all of those reasons, the evidence was more than sufficient. We submit for a rational juror to credit his admissions in 2017 and find that he lied on his naturalization application and on his 2010 passport application. Turning briefly to the question of the jury instruction, the district court did not abuse its discretion in denying Mr. Al-Harbi's request for an instruction on the definition of parentage under the INA. And, Judge Aitken, to your questioning, as I read the colloquy between counsel and the court about this request for an instruction, I think it is more of a specific request for an instruction under the INA, under Section 1101B. And it did focus on the legitimating child provision. And the court was correct to deny this request for several reasons. First, if this court agrees with the BIA's longstanding interpretation of the legitimating child provision, as requiring that the legitimated child be the biological offspring, the legitimating parent, that would be a basis to affirm. The only thing that I found strange in the colloquy is it seems like the district court is saying you can make a sort of factual, you can make an argument, a factual argument to the jury as to what the meaning of parent is. That's certainly an unusual approach, wouldn't you agree? It's a different approach. It may not necessarily be the only approach. But it certainly, and I don't mean to just jump right ahead to prejudice, but it did give Mr. Al Harby the latitude to present his theory of the case to the jury. He was able to argue. He pointed to one of these documents counsel did during summation. He argued that when Mr. Al Harby sort of originally filled out that 92 visa application, he put down Merched, because Merched was the only name that he knew. There's two issues. Could, in light of these documents, his uncle be deemed his father or parent under the statute? And then there's the intent question. Might they provide enough to argue that he understood his uncle to be his father for purposes of filling out these documents? And it just feels like in that discussion, in that colloquy, there's confusion between those two issues. There might have been not an exact sort of alignment in the back and forth that went on, Your Honor, but at the end of the day, Mr. Al Harby ultimately was able to argue, had that latitude to argue, that I believe my uncle was my real father. Because counsel during summation did focus on the requirement, not only that the statement be false, but of course, that the jury had to find that Mr. Al Harby knew that this was a false statement. And certainly, he had full latitude to argue that. He could argue that his uncle was his legal father. But in terms of the requirement for getting the instruction, Mr. Al Harby's obligation was to present evidence that supported his requested instruction. And by presenting two documents that... I'm sorry. I mean, I get that the documents are undermined by his distancing from them, but they are in evidence. I mean, I suppose the argument is you can't sort of both rely on them and not rely on them. Is that the idea? I think so, Your Honor. Where you have a defendant who testifies to testify at trial and disavows the very evidence, you know, on the stand, under oath, disavows the very evidence, your argument to the court should be the basis for this instruction. I don't think the court, district court in those circumstances, is required to find that that is enough evidence to... I mean, the documents were stipulated in because there's benefits to the government as well, right? They're in evidence. Right. I think the stipulation referred to their admissibility as part of the 92 visa application, Your Honor. So they're in evidence, and he says, well, I want to charge because one of them shows legitimization under the Yemeni law. And so the district court, even though they're in evidence, the district court should conclude there's not an evidentiary basis for that charge because his testimony disavows the accuracy of the documents. Yes, Your Honor, that is our argument. Certainly, there was no other evidence, and my friend can correct me if I'm wrong, not evidence, but submissions regarding the Yemeni law. The only thing that the record otherwise contains is this very... person can take a child in and automatically give that person's name. So under these circumstances, I think we think that the district court charted a proper course, a fair course, that didn't unduly emphasize evidence that by Mr. Al Harby's own admission was false, but at the same time gave Mr. Al Harby the latitude to argue, point to these documents, argue that his uncle was his legal father, or at a minimum that Mr. Al Harby believed that to be the case, and therefore the jury should not convict him. And the jury ultimately found otherwise and concluded beyond a reasonable doubt that he was in fact guilty of the two charges in the indictment. I see that my time is expiring. I'm happy to answer any additional questions. If not, we ask that the court affirm. Thank you. Thank you, counsel. We'll hear from him. Your Honor, I don't share the factual assertion that Mr. Al Harby disavowed those documents. There was one fact in those documents, that his aunt was his biological mother. He readily conceded that that was not the case. He said, listen, I didn't fill these documents out. But that doesn't mean that the documents don't legitimately show that his uncle became his legal parent in Yemen. There were two documents. Legitimating is generally a process of acknowledging a biological responsibility as opposed to adopting, which is taking on a legal responsibility. I understand those terms to be two different things. I find it so curious that he realized that legitimating as opposed to adopting. And I realize that he says that you can't adopt him in Yemen. But if his uncle is not his biological father, you can't legitimate him either. Well, I don't see where the term legitimate is defined as exclusively biological. I think the statute specifically says that 1101C says it could be in wedlock, out of wedlock, legitimated. I think the case law of this court says that it does not have to be a biological rapport between the two. The Jane v. Sessions, the Scales case, the Ninth Circuit, and certainly the New York State, the New York Court of Appeals. No, I understand all that, but I find it fair enough. Ultimately, my point is that there does not have to be a biological rapport between the two. And the documents, whether there is one sentence in there that says his aunt is his biological mother, is incorrect. They still evidence the fact that... That's the whole hope for the legitimating value of that document, is that if the aunt was the mother, then the uncle becomes the legitimate father. Not by adoption, but by biology. So that you can't just take part of it and not the rest of it. I think that's the government's argument. Well, I think you can. There were two different documents. A255, the document at A255 says his aunt is his biological mother. He readily conceded that, look, he said, listen, I didn't fill out these documents, obviously my aunt is not my biological mother, but my uncle recognized in court that I was his son and he gave me his name. Twice he did that. Once in 1982 and once in 1992. And this is when I was two years old, he gave me this name. And this is the name I've been using since I was a child. You know, asking Mr. Harvey to delve back to when he was two years old, what happened when you were two? Does anyone remember what happened when they were two? No one remembers that. It was the name he grew up using. And that is the name he used, Your Honor. And we have two documents that said he was the son of Ahmed Merced. That was in evidence. Whether the jury wanted to, how much weight the jury wanted to give to that, he merited that charge. It was consistent with the law. It was consistent with the law of the circuit. It was consistent with the evidence. He showed some evidence that he had been legitimated. He warranted that charge that parent is more than biological parent or within the boundaries of matrimony. Unless there are any further questions? Thank you. Thank you, counsel. Thank you both. We'll take the case under advisement.